UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAUGATUCK, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br><br>ST. MARY'S COMMONS ASSOCIATES, L.L.C., a Delaware limited liability company,<br><br>Defendant. | COMPLAINT<br><br><br><br>Case No.: |

Saugatuck, L.L.C. ("Plaintiff") hereby states and alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff, as the successor-in-interest to RCC Credit Facility, L.L.C. and Related Direct SLP LLC, is the Investor Limited Partner (in such capacity, the "Investor Limited Partner") and Special Limited Partner (in such capacity, the "Special Limited Partner") of St. Mary's Commons Apartments, L.P. (the "Partnership"), a low-income housing tax credit ("LIHTC") limited partnership formed to construct, own, finance, operate, and dispose of an affordable housing development in Williamsville, New York (the "Apartment Complex"). Defendant St. Mary's Commons Associates, L.L.C. ("Defendant") is the general partner of the Partnership. The Partnership is governed by an Amended and Restated Agreement of Limited Partnership, dated as of May 22, 2003, as amended (the "Partnership Agreement"), which is attached hereto as Exhibit A.

1

2. A dispute has arisen between the parties concerning the proper disposition of the Apartment Complex. The Partnership Agreement gives the Partnership's Special Limited Partner the right to force a sale of the Apartment Complex through two different mechanisms, one of which is initiation of a "Qualified Contract" process. The Qualified Contract process is a sale mechanism expressly contemplated by and provided for in Section 42 of the Internal Revenue Code ("Section 42"), which codifies the federal LIHTC program.

3. The Special Limited Partner exercised its "Qualified Contract" right on January 10, 2018 by providing written notice to Defendant, attached hereto as Exhibit B, instructing Defendant to submit an application to the New York Homes and Community Renewal Department ("NYHCR") to try to locate a buyer who would continue to operate the Apartment Complex as qualified low-income housing. Defendant submitted a preliminary Qualified Contract application on or around February 6, 2018, and a formal application on or around on September 4, 2018. The Qualified Contact process is thus already underway, and will conclude either upon the sale of the Apartment Complex to a third party located by NYHCR; or, if NYHCR cannot locate a buyer, upon the expiration of one year from when the Apartment Complex is first listed for sale.

4. The Partnership and Defendant are also parties to an Option Agreement dated May 22, 2003 (the "Option Agreement"), attached hereto as Exhibit C. Pursuant to that Option Agreement, Defendant has an "Option"—during the contractually defined "Option Term," and assuming other criteria are satisfied—either to purchase the Apartment Complex from the Partnership for a price to be determined pursuant to the Option Agreement or to have the Partnership redeem Plaintiff's interests in the Partnership for a redemption price that would put

Plaintiff in the same economic position as if the Partnership had sold the Apartment Complex to Defendant.

5. On January 1, 2019, Defendant sent a letter, attached hereto as Exhibit D, purporting to exercise its Option to have the Partnership redeem Plaintiff's interests.

6. In light of initiation of the Qualified Contract process, Defendant cannot exercise its Option while the Qualified Contract process is pending. Exercising the Option and forcing a sale—either a sale of the Apartment Complex by the Partnership to Defendant, or a redemption by the Partnership of Plaintiff's partnership interests—before the Qualified Contract process is complete would interfere with and completely negate the Special Limited Partner's bargained for right to pursue the Qualified Contract process. Because the Special Limited Partner exercised its Qualified Contract right in January 2018, *before* Defendant exercised—or could exercise—its purchase Option, the Qualified Contract process necessarily takes precedence.

7. Based on Defendant's January 1, 2019 letter, Defendant appears to contend that it is entitled to exercise its Option notwithstanding the Special Limited Partner's earlier exercise of its Qualified Contract right. A live dispute and controversy therefore exists between the parties concerning their rights, responsibilities, and obligations under the Partnership Agreement and Option Agreement.

8. The parties also currently dispute the proper calculation of the option price under the Option Agreement, in the event that Defendant is entitled to exercise its rights under that agreement in advance of completing the Qualified Contract process. The Option Agreement provides that if Defendant purchases the Apartment Complex from the Partnership, the price shall be the fair market value of the Apartment Complex (or another amount, if higher). If Defendant instead elects to have the Partnership redeem Plaintiff's interests in the Partnership,

3

the redemption price must be such that the economic, tax, and other material consequences of the transaction for Plaintiff are no worse than if Defendant instead purchased the Apartment Complex from the Partnership.

9. Under Section 12.1 of the Partnership Agreement, any sale of the Apartment Complex—whether to Defendant or to a third party—requires a dissolution of the Partnership and liquidation of the Partnership's assets. Pursuant to the Partnership Agreement's liquidation provisions, residual sale proceeds are to be split between the partners *pro rata* in accordance with the partners' respective capital account balances ("Capital Accounts").

10. The amount in Plaintiff's Capital Accounts is greater than ninety-nine percent (99%) of the total amount of the Capital Accounts of all partners of the Partnership. Based on the Partnership's economic condition and the Apartment Complex's taxable basis, any sale price that is high enough to result in a gain on sale that could be allocated to the General Partner—and thus shift the pro rata split percentages more in Defendant's favor—would generate proceeds sufficient to pay Plaintiff's entire positive Capital Accounts balance. Thus, pursuant to the liquidation provisions of the Partnership Agreement, Plaintiff is entitled to have its entire existing positive Capital Accounts balance repaid before any material amount of sales proceeds can be distributed to Defendant.

11. Notwithstanding the plain language of the Partnership Agreement and Option Agreement, Defendant contends that upon a sale of the Apartment Complex, residual sale proceeds should be split according to a different provision in the Partnership Agreement. Defendant's preferred (and inapplicable) provision provides for a residual split of 75% to Defendant and 25% to Plaintiff, with *no consideration given to the partners' respective Capital Accounts*. Defendant therefore contends that the purchase price is far lower than what the Option

Agreement and Partnership Agreement actually provide.  Defendant staked out this position in correspondence from August 2018, November 2018, and January 2019.  In this correspondence, Defendant offered to buy out the limited partners' interests at a price that Defendant claimed was greater than the amount Plaintiff would receive for its interests upon a valid exercise of the Option.  The buyout price Defendant offered, however, was *far below* the outstanding balance of Plaintiff's Capital Account; the calculations Defendant provided to defend its buyout offer price erroneously assumed that residual sales proceeds would be split 75% to Defendant and 25% to Plaintiff, instead of *pro rata* in accordance with the partners' respective Capital Accounts.

12. Defendant therefore misinterprets the relevant contracts in two key respects.  First, it contends that it need not wait until the completion of the Qualified Contact process before exercising its Option and having the Partnership redeem Plaintiff's interests in the Partnership.  Second, it erroneously calculates the price Plaintiff must be paid if and when Defendant is allowed to exercise its Option.  Neither of Defendant's interpretations is supported by the plain language of the agreements, and both should be rejected.

## **PARTIES**

13. The Partnership is a New York limited partnership organized in 2001 in order to construct, own, finance, operate, and dispose of the Apartment Complex.  The Apartment Complex is located at 400 Mill Street, Williamsville, New York, 14221, which is the Partnership's principal place of business.

14. Plaintiff Saugatuck, LLC is a Delaware limited liability company, and is the Partnership's Investor Limited Partner and Special Limited Partner.  Plaintiff's sole member is Charlevoix Credit Holdings, LLC ("Charlevoix"), a Delaware limited liability company. The sole member of Charlevoix, in turn, is Centerline Capital Group, LLC ("Centerline"), a Delaware

5

limited liability company.  Centerline's sole member is Centerline Holding Company ("Centerline Holding"), a Delaware statutory trust.  The sole owner of Centerline Holding is Ostego Holdings, LLC ("Ostego"), a Delaware limited liability company.  Ostego's sole member, in turn, is Alden Torch Financial LLC ("Alden Torch"), a Delaware limited liability company.  Alden Torch has four individual members, three of whom reside in and are citizens of Colorado, and one of whom resides in and is a citizen of Massachusetts.  Plaintiff is therefore a citizen of Colorado and Massachusetts (and no other state).

15. The fact that Plaintiff and Defendant are both Delaware limited liability companies has no bearing on whether their citizenship is diverse.  *See Nw. Consultants, Inc. v. Bloom*, No. 10 CV 5087 SJF AKT, 2012 WL 1941878, at *9 (E.D.N.Y. May 22, 2012) ("Neither the principal place of business of an unincorporated association, nor the State in which that association was formed, are relevant for purposes of diversity jurisdiction") (citing *Woodward v. D.H. Overmyer Co.*, 428 F.2d 880, 883 (2d Cir. 1970)) (other internal citations omitted).

16. Plaintiff's predecessor-in-interest contributed millions of dollars in capital to the Partnership in exchange for the rights conveyed to the Investor Limited Partner under the Partnership Agreement.

17. Defendant St. Mary's Commons Associates, L.L.C. is a Delaware limited liability company, and is the Partnership's General Partner as that term is defined in the Partnership Agreement.  Plaintiff alleges on information and belief that Defendant's principal place of business is 2001 Marcus Avenue, Suite N118, Lake Success, New York, 11042.  On information and belief, Defendant's members all reside in and are citizens of New York.

## JURISDICTION, VENUE, AND CHOICE OF LAW

18. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Defendant is a citizen of New York, while Plaintiff is a citizen of Colorado and Massachusetts. In addition, the difference in the valuation of Plaintiff's interests in the Partnership, depending on whether Plaintiff's or Defendant's interpretation of the Partnership Agreement and Option Agreement controls, is greater than $75,000.

19. Plaintiff seeks declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure ("FRCP") and 28 U.S.C. §§ 2201 and 2202, which grant this Court authority to declare the rights and other legal relations surrounding questions of actual controversy that exist between Plaintiff and Defendant.

20. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is located in this district.

21. Article X(f) of the Option Agreement provides that the Option Agreement shall be governed by and construed in accordance with New York law.

## FACTS

**A.    The LIHTC Program**

22. Congress passed the LIHTC provisions in Section 42 of the Internal Revenue Code ("Section 42") in order to promote private investment in the development of affordable housing. Section 42 permits investors who commit capital to developing and operating affordable housing projects to earn tax credits generated by those projects, as well as tax

deductions arising out of reductions in the investor's capital account and other benefits attendant to their ownership interests.

23. LIHTC investments are typically structured as limited partnerships between an investor limited partner, who provides the necessary capital, and a general partner, who is responsible for developing and operating the project (and earns substantial fees for doing so).

**B.     Formation Of The Partnership**

24. The Partnership was formed in 2001 as an investment vehicle designed to generate low-income housing tax credits pursuant to Section 42 of the Internal Revenue Code ("IRC Section 42") while at the same time creating new affordable housing in Williamsville, New York.

25. The Partnership's partners include: a General Partner (Defendant), who is responsible for developing and operating the Apartment Complex; an Investor Limited Partner, who contributed nearly all of the Partnership's capital; and a Special Limited Partner, who has certain rights under the Partnership Agreement and who is typically affiliated with the Investor Limited Partner. Plaintiff is the successor-in-interest to both the original Investor Limited Partner and the original Special Limited Partner, and currently holds the interests of both the Investor Limited Partner and the Special Limited Partner.

26. As a low-income housing tax credit partnership, the Partnership was subject to a statutory fifteen-year "Compliance Period" under Section 42 during which the LIHTC generated by the Apartment Complex were earned and/or could be recaptured. The Compliance Period for the Partnership ended on December 31, 2018.

### C.     The Partnership Agreement

27. The Partnership Agreement became operative on July 10, 2001, and was subsequently amended on May 22, 2003.  On January 10, 2019, the interests of the Investor Limited Partner and Special Limited Partner were assigned to Plaintiff.

28. Section 3.7 of the Partnership Agreement establishes Capital Accounts for the Partnership's partners in an initial amount equal to their respective capital investments in the Partnership.  The Investor Limited Partner contributed more than $7 million in capital to the Partnership, and has a current positive Capital Account balance in excess of $4 million.

29. Section 5.4.B of the Partnership Agreement gives Plaintiff the right to force a sale of the Apartment Complex through two different mechanisms.  First, Section 5.4.B(i) permits Plaintiff to instruct Defendant to submit a written request to the New York Homes and Community Renewal Agency ("NYHCRA") to endeavor to locate a buyer who will continue to operate the Apartment Complex as a qualified low-income building at a purchase price set by Section 42.  Plaintiff may exercise this "Qualified Contract" right at any time after the fourteenth year of the Compliance Period (i.e., one year before the end of the Compliance Period).

30. Second, Section 5.4.B(ii) permits Plaintiff to require Defendant at any time after the end of the Compliance Period to promptly use its best efforts to find a buyer for the Apartment Complex on the most favorable terms then obtainable.  Even if a sale pursuant to this provision were to occur, the Apartment Complex would continue to be operated as affordable housing until at least 2034 because of applicable deed restrictions.

31. Section 9.2.B of the Partnership Agreement includes a "waterfall" provision that identifies how—"[s]ubject to the provisions of Sections 9.2D and 12.4"—the proceeds from a sale or refinancing transaction are to be applied.  The waterfall in Section 9.2.B of the

Partnership Agreement provides that seventy-five percent (75%) of residual proceeds are to be distributed to Defendant as the General Partner, with the remaining twenty-five percent (25%) distributed collectively to Plaintiff as Investor Limited Partner and Special Limited Partner: 24.99% to the Investor Limited Partner, and 0.01% to the Special Limited Partner.

32. Section 12.1 of the Partnership Agreement states that the Partnership shall be dissolved upon, among other events, the sale or other disposition of all or substantially all of the assets of the Partnership. The Apartment Complex constitutes substantially all of the Partnership's assets.

33. Section 12.2 of the Partnership Agreement states that, "[u]pon the dissolution of the Partnership, the Partnership shall be liquidated in accordance with this Article XII and the Uniform Act."

34. Section 12.4 provides that residual proceeds from a liquidation of the Partnership must be distributed to the partners "pro rata in accordance with their respective Capital Accounts." At all times alleged herein, the amount of Plaintiff's Capital Accounts has been greater than ninety-nine percent (99%) of the total amount of the Capital Accounts of all partners of the Partnership.

**D.    The Option Agreement**

35. The Partnership and Defendant are also parties to an Option Agreement dated May 22, 2003.

36. The Option Agreement gives Defendant an Option—so long as certain other criteria are satisfied—to purchase the Apartment Complex from the Partnership during the "Option Term," which is the two year period following the completion of the Compliance Period. The Option Agreement further provides that the price Defendant shall pay for the

Apartment Complex for a sale pursuant to the Option shall be the greater of: (1) the then fair market value of the Apartment Complex, or (2) the sum of an amount sufficient to pay off the outstanding mortgage encumbering the Apartment Complex, the tax liability Plaintiff would incur as a result of the sale, and the amount of any unreimbursed deficiency in LIHTC recognized by Plaintiff.

37. Because, as alleged above, the Apartment Complex constitutes substantially all of the assets of the Partnership, a sale by the Partnership of the Apartment Complex—whether such sale is to Defendant pursuant to the Option Agreement or otherwise—triggers dissolution under Section 12.1 of the Partnership Agreement.

38. Article VII of the Option Agreement also provides that—assuming the conditions for exercising the Option are satisfied—Defendant can reform the Option Agreement to provide for a redemption by the Partnership of the limited partners' partnership interests instead of a sale of the Apartment Complex to Defendant.  But if Defendant takes this approach, then the price paid to Plaintiff for such redemption must be such that it would put Plaintiff in the same financial condition as if there had been a sale of the Apartment Complex, taking into account all economic, tax, and other material consequences.

39. Thus, regardless of whether it opts to buy the Apartment Complex from the Partnership or instead to have the Partnership redeem Plaintiff's interests, the Option Price that Defendant must pay is determined in accordance with the partners' respective positive Capital Account balances.

E.     **Invocation of The "Qualified Contract" Right**

40. On January 10, 2018, the Special Limited Partner sent Defendant a letter exercising its "Qualified Contract" rights under Section 5.4.B(i) of the Partnership Agreement.

11

The letter instructed Defendant to submit a written request to the NYHCRA to endeavor to locate a buyer who would continue to operate the Apartment Complex as a qualified low-income building at a purchase price not less than the debt encumbering the Apartment Complex plus the Partnership's equity in the Apartment Complex.

41. Defendant submitted a preliminary "Qualified Contract" application on or around February 2, 2018, and a formal application on September 4, 2018.

E. **Communications Regarding the Disposition of the Partnership**

42. As is common in the low-income housing tax credit industry, as the end of the Compliance Period approached, Defendant communicated with a representative of the Investor Limited Partner and Special Limited Partner (collectively, the "Limited Partners") regarding the disposition of the Partnership. Certain of Defendant's principals, including Tom Granville, engaged in these communications.

43. During these communications, Defendant expressed interest in purchasing the Limited Partners' interests in the Partnership, but the parties were not able to reach an agreement concerning a possible sale of those interests to Defendant.

44. In the course of these communications, it became clear that the Limited Partners and Defendant had differing views on (a) how the Special Limited Partner's "Qualified Contract" right and Defendant's Option relate to one another, and (b) how to calculate the purchase price under the Option Agreement.

45. Defendant purported to exercise its Option on January 1, 2019. Plaintiff contends that Defendant may not interrupt the Qualified Contract process by exercising its Option while the Qualified Contact process is pending. Defendant, by contrast, contends that it may terminate the Qualified Contract process through the exercise of its Option.

46. The communications between the parties further establish that the parties disagree as to the proper calculation of the purchase price that would apply upon any valid exercise of the Option (or reformation of the Option Agreement to provide for redemption of Plaintiff's interests). Specifically, when offering to purchase the Limited Partners' interests in the Partnership, Defendant calculated a purchase price that it claimed was consistent with the price that Defendant would need to pay upon the exercise of its Option. The calculation provided, however, fails to honor the terms of the Partnership Agreement.

47. As explained above, if Defendant exercises its Option and chooses to purchase the Apartment Complex from the Partnership, it must pay (at a minimum) fair market value for the Apartment Complex, and sale proceeds must be distributed according to the liquidation waterfall set forth in Section 12.4. Pursuant to that liquidation waterfall, Plaintiff is entitled to have its entire existing positive Capital Account balance repaid before any sales proceeds could be distributed to Defendant. And if Defendant opts instead to have the Partnership redeem Plaintiff's partnership interests, the price paid for such redemption must be sufficient to put Plaintiff in the same economic position as it would be in if Defendant had opted to purchase the Apartment Complex from the Partnership.

48. Because the Limited Partners contributed the vast majority of the capital to the Partnership—and because the amount of their positive Capital Accounts is still more than 99% of the amount of the Capital Accounts of all partners—Plaintiff is entitled to the repayment of those Capital Accounts upon liquidation (or upon redemption of its interests pursuant to the Option Agreement). Based on the Partnership's economic condition and the Apartment Complex's taxable basis, any sale price that is high enough to result in a gain on sale that could be allocated to the General Partner—and thus shift the pro rata split percentages more in Defendant's favor—

would generate proceeds sufficient to pay Plaintiff's entire positive Capital Accounts balance. Thus, pursuant to the liquidation provisions of the Partnership Agreement, Plaintiff is entitled to have its entire existing positive Capital Accounts balance repaid before any material amount of sales proceeds can be distributed to Defendant.

49. Defendant, however, asserts that it need not comply with the liquidation waterfall set forth in Section 12.4 of the Partnership Agreement. Instead, it contends that residual sales proceeds should be distributed according to the waterfall in Section 9.2.B of the Partnership Agreement (with seventy-five percent (75%) of residual proceeds going to Defendant, and twenty-five percent (25%) of residual proceeds going to Plaintiff).

50. Defendant's position ignores Plaintiff's positive Capital Accounts and ignores the plain language of the Partnership Agreement, which explicitly provides that the sale of the Apartment Complex is a liquidating event, and that the waterfall in Section 9.2.B is "[s]ubject to the provisions of Sections 9.2D and 12.4 hereof."

51. These disputes must be resolved in order to determine (a) whether and when Defendant may exercise its Option; and (b) how to calculate the purchase price payable to Plaintiff under the Option Agreement and Partnership Agreement.

## COUNT 1
### (Declaratory Judgment—Exercisability of Option)
### (By Plaintiff Against Defendant)

52. Plaintiff repeats and realleges each of the foregoing allegations as if set forth herein in full.

53. Plaintiff brings this claim in its individual capacity in order to enforce its contractual rights as the Partnership's Investor Limited Partner and Special Limited Partner.

54. Plaintiff and Defendant are parties to a Partnership Agreement that governs their respective rights and obligations to each other and to the Partnership. The Partnership Agreement is a valid, binding, and enforceable contract. The Limited Partners—whose interests are owned by Plaintiff—have performed all of their obligations under the Partnership Agreement.

55. Section 5.4.B(i) of the Partnership Agreement permits the Special Limited Partner to instruct Defendant to submit a written request to the NYHCRA to endeavor to locate a buyer who will continue to operate the Apartment Complex as a qualified low-income building at a purchase price that is not less than the debt encumbering the Apartment Complex plus the Partnership's equity in the Apartment Complex. The Special Limited Partner may exercise this "Qualified Contract" right at any time after the fourteenth year of the Compliance Period.

56. The Special Limited Partner exercised this right on or around January 10, 2018 by transmitting to Defendant a letter instructing it to submit a written request to the NYHCRA to endeavor to locate a buyer who would continue to operate the Apartment Complex as a qualified low-income building at the statutorily determined purchase price. Defendant caused the Partnership to submit a preliminary Qualified Contract application on our around February 6, 2018, and a formal application on September 4, 2018. The Qualified Contract process is thus underway.

57. Defendant and the Partnership are also party to an Option Agreement that grants a purchase Option to Defendant under certain circumstances. Defendant purported to exercise this Option on or around January 1, 2019 by transmitting a letter advising the Limited Partners of its intent to purchase their interests in the Partnership.

58. Plaintiff contends that Defendant may not exercise its Option while the Qualified Contract process is pending. Defendant contends that it may exercise its Option at any time beginning on January 1, 2019.

59. An actual controversy has arisen and now exists between Plaintiff, on one hand, and Defendant, on the other, as alleged herein.

60. Plaintiff is, therefore, entitled to a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that Defendant may not exercise its Option under the Option Agreement while the Qualified Contract process is pending, because such exercise would improperly interfere with the Special Limited Partner's Qualified Contract right and the earlier-initiated Qualified Contract process.

## COUNT 2

### (Declaratory Judgment—Purchase Price)
### (By Plaintiff Against Defendant)

61. Plaintiff repeats and realleges each of the foregoing allegations as if set forth herein in full.

62. Plaintiff brings this claim in its individual capacity in order to enforce its contractual rights as the Partnership's Investor Limited Partner and Special Limited Partner.

63. The Option Agreement sets forth the price that Defendant must pay to Plaintiff pursuant to an exercise of Defendant's Option. That purchase price is the greater of: (1) the amount the Limited Partners would receive if the Apartment Complex were sold for fair market value; or (2) the sum of an amount sufficient to pay off the outstanding mortgage encumbering the Apartment Complex, the tax liability Plaintiff would incur as a result of the sale, and the amount of any unreimbursed deficiency in LIHTC recognized by Plaintiff.

64. Upon Defendant's exercise of its Option, Sections 12.1 of the Partnership Agreement requires the purchase price to be calculated based on the application of the liquidation waterfall in Section 12.4 of the Partnership Agreement

65. Defendant, however, has taken the position that the price it must pay to Plaintiff in connection with the exercise of its Option should instead be calculated using the waterfall contained in Section 9.2.B of the Partnership Agreement. Defendant accordingly contends that the purchase price need only be sufficient to equal the economic consequences of a distribution under the Section 9.2.B waterfall—a much lower amount.

66. An actual controversy has therefore arisen and now exists between Plaintiff, on one hand, and Defendant, on the other, as alleged herein.

67. Plaintiff is, therefore, entitled to a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure that the price Defendant must pay in connection with the exercise of its Option must be calculated using the liquidation waterfall in Section 12.4 of the Partnership Agreement.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands the following relief:

(a) A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that Defendant may not exercise its Option under the Option Agreement while the Qualified Contract process is pending;

(b) A judicial declaration pursuant to Rule 57 of the Federal Rules of Civil Procedure that the price Defendant must pay in connection with the exercise of its Option must be calculated using the liquidation waterfall in Section 12.4 of the Partnership Agreement;

(c) Attorney's fees pursuant to Article IX of the Option Agreement; and

(d) Such other and further relief as the Court may deem just and proper.

DATED:  January 11, 2019                     BOIES SCHILLER FLEXNER LLP


/s/ Ilana Miller
**Boies Schiller Flexner LLP**
Ilana Miller
575 Lexington Ave, 7th Floor
New York, NY 10022
Telephone: 212 446 2367
Facsimile: 212 446 2350
Email: imiller@bsfllp.com

Christopher G. Caldwell, *pro hac vice* application forthcoming
Eric S. Pettit, *pro hac vice* application forthcoming
725 S Figueroa Street, 31st Floor
Los Angeles, CA 90017
Telephone:  213 629 9040
Facsimile:  213 629 9022
Email: ccaldwell@bsfllp.com
          epettit@bsfllp.com

Attorneys for SAUGATUCK, LLC, a Delaware limited liability company