UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

− − − − − − − − − − − − − − − − − − − − − − − − − − − x

SAUGATUCK, LLC, a Delaware limited liability    :
company,    : Case No. 2:19-CV-00217 (SJF) (SIL)
                        Plaintiff,    :
    -against-    : **DEFENDANT'S ANSWER AND**
    : **AMENDED COUNTERCLAIM**

ST. MARY'S COMMONS ASSOCIATES, L.L.C.,    :
a Delaware limited liability company,    :
    :
                        Defendant.    :

− − − − − − − − − − − − − − − − − − − − − − − − − − − x

Defendant St. Mary's Commons Associates, LLC ("St. Mary's" or the "General Partner"), as and for its Answer to the Complaint filed by plaintiff Saugatuck, LLC ("Plaintiff"), states and alleges as follows:

## GENERAL DENIAL

St. Mary's denies each and every allegation, matter and thing alleged in Plaintiff's Complaint, unless hereinafter specifically admitted or otherwise qualified.

## ANSWER

1.      With regard to the allegations contained in paragraph 1, upon information and belief, St. Mary's admits that Plaintiff is the successor-in-interest to the Investor Limited Partner and Special Limited Partner (collectively, the "Limited Partners") of St. Mary's Commons Apartments, LP (the "Partnership"). St. Mary's admits that it is the General Partner of the Partnership and that the Partnership is governed by the Amended and Restated Agreement of Limited Partnership dated as of May 22, 2003 (the "LPA"). As concerns the allegations regarding the Partnership's purpose, St. Mary's states that the terms of the LPA speak for themselves. To the extent any allegations contained in paragraph 1 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

2.      With regard to the allegations contained in paragraph 2, St. Mary's admits that a dispute has arisen between the parties with respect to St. Mary's exercise of its option (the "Purchase Option") granted under the Option Agreement dated as of May 22, 2003 (the "Option Agreement").  As concerns the allegations regarding the provisions of the LPA, St. Mary's states that the terms of the LPA speak for themselves.  As concerns the allegations regarding the Qualified Contract process, St. Mary's states that these allegations state legal conclusions to which no response is required.  To the extent any allegations contained in paragraph 2 are inconsistent with the terms of the LPA, the Option Agreement, or Section 42 of the Internal Revenue Code, St. Mary's denies those allegations.

3.      St. Mary's admits the allegations contained in the first two sentences of paragraph 3.  With regard to the allegations contained in the third sentence of paragraph 3, St. Mary's denies that the Qualified Contract process is underway.

4.      With regard to the allegations contained in paragraph 4, St. Mary's admits that the Partnership and St. Mary's are parties to the Option Agreement.  As concerns the allegations regarding the provisions of the Option Agreement, St. Mary's states that the terms of the Option Agreement speak for themselves.  To the extent any allegations contained in paragraph 4 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

5.      With regard to the allegations contained in paragraph 5, St. Mary's admits that on January 1, 2019, it exercised its Purchase Option under the Option Agreement to have the Partnership redeem Plaintiff's interests in the Partnership.

6.      St. Mary's denies the allegations contained in paragraph 6.

7.      St. Mary's admits the allegations contained in paragraph 7.

8.     St. Mary's admits the allegations contained in the first sentence of paragraph 8 as it concerns the parties' dispute over the proper calculation of the option price under the Option Agreement now that St. Mary's has exercised its Purchase Option as it is entitled to do notwithstanding Plaintiff's contentions otherwise.  As concerns the remaining allegations in the first sentence of paragraph 8 and the remainder of paragraph 8, St. Mary's states that the terms of the Option Agreement speak for themselves.  To the extent any allegations contained in paragraph 8 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

9.     With regard to the allegations contained in paragraph 9 concerning the provisions of the LPA, St. Mary's denies those allegations and states that the terms of the LPA speak for themselves.  St. Mary's denies any remaining allegations in paragraph 9.

10.     St. Mary's admits the allegations in the first sentence of paragraph 10.  St. Mary's denies the remaining allegations in paragraph 10.

11.     With regard to the allegations contained in paragraph 11 concerning St. Mary's communications with the Limited Partners, St. Mary's admits that it has expressed to the Limited Partners that, under the LPA, residual proceeds from a sale of the Apartment Complex are to be distributed in accordance with the distribution waterfall set forth in Section 9.2.B of the LPA (the "Sales Proceeds Waterfall") with no consideration given to the Limited Partners' capital accounts. St. Mary's admits that in its correspondence with the Limited Partners it has offered to purchase the Limited Partners' interests in the Partnership for an amount greater than the amount the Limited Partners would receive for their interests upon the exercise of the Purchase Option.  To the extent that the allegations contained in paragraph 11 are inconsistent with the terms of the Option Agreement, the LPA, or St. Mary's correspondence with the Limited Partners, St. Mary's denies those allegations and states that these documents speak for themselves.

12.     With regard to the allegations contained in paragraph 12, St. Mary's denies that it has misinterpreted the relevant contracts.  To the extent that the allegations contained in paragraph 12 are inconsistent with the terms of the Option Agreement, the LPA, or St. Mary's correspondence with the Limited Partners, St. Mary's denies those allegations and states that these documents speak for themselves.

## PARTIES

13.     The allegations contained in paragraph 13 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 13 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

14.     Upon information and belief, St. Mary's admits the allegations contained in paragraph 14.

15.     The allegations contained in paragraph 15 set forth legal conclusions to which no response is required.

16.     St. Mary's admits the allegations contained in paragraph 16.

17.     St. Mary's admits the allegations contained in the first two sentences of paragraph 17.  St. Mary's denies the remaining allegations in paragraph 17.

## JURISDICTION, VENUE, AND CHOICE OF LAW

18.     St. Mary's admits the allegations contained in the first sentence of paragraph 18.  With regard to the allegations contained in the second sentence of paragraph 18, upon information and belief, St. Mary's admits that Plaintiff is a citizen of Colorado and Massachusetts, St. Mary's denies that it is a citizen of New York, and St. Mary's admits that its members consist of John E. Cerio, who is a citizen of the State of Florida, and Whitney St. Mary's Associates, whose members consist of D. Garry Munson, who is a citizen of the State of Florida, and Thomas G. Granville,

who is a citizen of the State of New York.  St. Mary's admits the allegations contained in the third sentence of paragraph 18.

19.     With regard to the allegations contained in paragraph 19, St. Mary's admits only that Plaintiff seeks certain relief against St. Mary's; St. Mary's denies that Plaintiff is entitled to any relief whatsoever.

20.     St. Mary's admits the allegations contained in paragraph 20.

21.     The allegations contained in paragraph 21 address the terms of the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 21 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

## FACTS

22.     The allegations contained in paragraph 22 set forth legal conclusions to which no response is required.

23.     St. Mary's admits the allegations contained in paragraph 23, and further admits that investor limited partners generally provide capital in exchange for the right to receive tax credits and other tax benefits generated by the operation of the partnership, while general partners ordinarily contribute time and resources, and guarantee the delivery of the projected tax credits to the investor limited partners.

24.     The allegations contained in paragraph 24 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 24 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

25.     The allegations contained in paragraph 25 address the terms of the LPA and Plaintiff's assignment and assumption agreement, which speak for themselves.  To the extent that

the allegations contained in paragraph 25 are inconsistent with the terms of the LPA or Plaintiff's assignment and assumption agreement, St. Mary's denies those allegations.

26.     St. Mary's admits the allegations contained in paragraph 26.

27.     The allegations contained in paragraph 27 address the terms of the LPA and Plaintiff's assignment and assumption agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 27 are inconsistent with the terms of the LPA or Plaintiff's assignment and assumption agreement, St. Mary's denies those allegations.

28.     The allegations contained in paragraph 28 address the terms of the LPA and the Partnership's financial records, which speak for themselves.  To the extent that the allegations contained in paragraph 28 are inconsistent with the terms of the LPA or the Partnership's financial records, St. Mary's denies those allegations.

29.     The allegations contained in paragraph 29 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 29 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

30.     The allegations contained in paragraph 30 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 30 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

31.     The allegations contained in paragraph 31 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 31 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

32.     The allegations contained in paragraph 32 address the terms of the LPA and the Partnership's financial records, which speak for themselves.  To the extent that the allegations

contained in paragraph 32 are inconsistent with the terms of the LPA or the Partnership's financial records, St. Mary's denies those allegations.

33.     The allegations contained in paragraph 33 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 33 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

34.     The allegations contained in the first sentence of paragraph 34 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in the first sentence of paragraph 34 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.  St. Mary's admits the allegations contained in the second sentence of paragraph 34.

35.     With regard to the allegations contained in paragraph 35, St. Mary's admits that the Partnership and St. Mary's are parties to the Option Agreement.

36.     The allegations contained in paragraph 36 address the terms of the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 36 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

37.     The allegations contained in paragraph 37 address the terms of the LPA and the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 37 are inconsistent with the terms of the LPA or the Option Agreement, St. Mary's denies those allegations.

38.     The allegations contained in paragraph 38 address the terms of the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 38 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

39.     St. Mary's denies the allegations contained in paragraph 39.

40.     With regard to the allegations contained in paragraph 40, St. Mary's states that the Special Limited Partner's correspondence speaks for itself.  To the extent any allegations contained in paragraph 40 are inconsistent with the Special Limited Partner's correspondence, St. Mary's denies those allegations.

41.     St. Mary's admits the allegations contained in paragraph 41.

42.     St. Mary's admits the allegations contained in paragraph 42.

43.     St. Mary's admits the allegations contained in paragraph 43.

44.     St. Mary's admits the allegations contained in paragraph 44.

45.     With regard to the allegations contained in the first sentence of paragraph 45, St. Mary's admits that on January 1, 2019, it exercised its Purchase Option under the Option Agreement to have the Partnership redeem Plaintiff's interests in the Partnership.  St. Mary's admits the remainder of the allegations contained in paragraph 45, except denies that a Qualified Contract was pending when St. Mary's exercised its Purchase Option.

46.     St. Mary's admits the allegations contained in the first sentence of paragraph 46. With regard to the allegations contained in the second sentence of paragraph 46, St. Mary's admits that in its correspondence with the Limited Partners it has offered to purchase the Limited Partners' interests in the Partnership for an amount greater than the amount the Limited Partners would receive for their interests upon the exercise of the Purchase Option.  To the extent that the allegations contained in the second sentence of paragraph 46 are inconsistent with St. Mary's correspondence with the Limited Partners, St. Mary's denies the same and states that its correspondence speaks for itself.  St. Mary's denies the remainder of the allegations contained in paragraph 46.

47.     The allegations contained in paragraph 47 address the terms of the LPA and the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 47 are inconsistent with the terms of the LPA or the Option Agreement, St. Mary's denies those allegations.

48.     St. Mary's denies the allegations contained in paragraph 48.

49.     With regard to the allegations contained in paragraph 49, St. Mary's admits that Section 12.4 of the LPA is not applicable to St. Mary's exercise of its Purchase Option, and that the purchase price for the redemption of the Limited Partners's interests in the Partnership must be equal to the economic consequences of a hypothetical sale of the Apartment Complex during the operation of the Partnership as a going concern, with residual sales proceeds being distributed in accordance with Section 9.2.B of the LPA.  St. Mary's denies the remaining allegations contained in paragraph 49.

50.     St. Mary's denies the allegations contained in paragraph 50.

51.     With regard to the allegations contained in paragraph 51, St. Mary's admits only that Plaintiff seeks certain relief against St. Mary's; St. Mary's denies that Plaintiff is entitled to any relief whatsoever.

## COUNT 1

52.     In response to paragraph 52, St. Mary's incorporates the preceding paragraphs by reference.

53.     With regard to the allegations contained in paragraph 53, St. Mary's admits only that Plaintiff seeks certain relief against St. Mary's; St. Mary's denies that Plaintiff is entitled to any relief whatsoever.

54.     St. Mary's admits the allegations contained in the first two sentences of paragraph 54.  St. Mary's denies the remainder of the allegations contained in paragraph 54.

55.     The allegations contained in paragraph 55 address the terms of the LPA, which speak for themselves.  To the extent that the allegations contained in paragraph 55 are inconsistent with the terms of the LPA, St. Mary's denies those allegations.

56.     St. Mary's admits the allegations contained in the first two sentences of paragraph 56.  With regard to the allegations contained in the third sentence of paragraph 56, St. Mary's denies that the Qualified Contract process is underway.

57.     St. Mary's admits the allegations contained in the first sentence of paragraph 57. With regard to the allegations contained in the second sentence of paragraph 57, St. Mary's admits that on January 1, 2019, it exercised its Purchase Option to have the Partnership redeem Plaintiff's interests in the Partnership.

58.     St. Mary's admits the allegations contained in paragraph 58, except denies that a Qualified Contract was pending when St. Mary's exercised its Purchase Option.

59.     With regard to the allegations contained in paragraph 59, St. Mary's admits only that an actual controversy has arisen and now exists between the parties.

60.     St. Mary's denies the allegations contained in paragraph 60.

## COUNT 2

61.     In response to paragraph 61, St. Mary's incorporates the preceding paragraphs by reference.

62.     With regard to the allegations contained in paragraph 62, St. Mary's admits only that Plaintiff seeks certain relief against St. Mary's; St. Mary's denies that Plaintiff is entitled to any relief whatsoever.

63.     The allegations contained in paragraph 63 address the terms of the Option Agreement, which speak for themselves.  To the extent that the allegations contained in paragraph 63 are inconsistent with the terms of the Option Agreement, St. Mary's denies those allegations.

64.     St. Mary's denies the allegations contained in paragraph 64.

65.     St. Mary's admits the allegations contained in the first sentence of paragraph 65 and denies the remaining allegations in paragraph 65.

66.     With regard to the allegations contained in paragraph 66, St. Mary's admits only that an actual controversy has arisen and now exists between the parties.

67.     St. Mary's denies the allegations contained in paragraph 67.

## PRAYER FOR RELIEF

St. Mary's denies that Plaintiff is entitled to any relief whatsoever.

## AFFIRMATIVE DEFENSES

1.     Plaintiff's Complaint is barred because it is contrary to the provisions of the LPA and the Option Agreement.

2.     St. Mary's hereby reserves the right to add any additional affirmative defenses as discovery in this matter proceeds.

## COUNTERCLAIM

1.     This action seeks, among other things, a declaration of the rights and obligations of parties to a limited partnership agreement and option agreement concerning St. Mary's Commons Apartments, LP (the "Partnership"), a limited partnership formed for the purpose of investing in real property and constructing, owning, operating, maintaining, and sustaining, for many decades, an affordable housing development located in Amherst, New York (the "Apartment Complex").

2.     St. Mary's Commons Associates, LLC ("St. Mary's" or the "General Partner") is a limited liability company organized under the laws of the State of Delaware, with a principal place of business in Lake Success, New York.  St. Mary's members consist of John E. Cerio, who is a citizen of the State of Florida, and Whitney St. Mary's Associates, whose members consist of D.

Garry Munson, who is a citizen of the State of Florida, and Thomas G. Granville, who is a citizen of the State of New York. St. Mary's is the General Partner of the Partnership.

3.      On information and belief, pursuant to an Assignment and Assumption Agreement dated as of January 10, 2019, Plaintiff is the successor-in-interest to Related Direct SLP LLC, and as such is the Special Limited Partner of the Partnership (the "Special Limited Partner").

4.      On information and belief, pursuant to that Assignment and Assumption Agreement dated as of January 10, 2019, Plaintiff is the successor-in-interest to RCC Credit Facility, LLC, and as such is the Investor Limited Partner of the Partnership (the "Investor Limited Partner").  Collectively, the Special Limited Partner and Investor Limited Partner are hereinafter referred to as the "Limited Partners."

5.      On information and belief, as alleged in Plaintiff's Complaint, Plaintiff's members all reside in and are citizens of the State of Colorado or the State of Massachusetts.

6.      Plaintiff's ultimate owner, Alden Torch Financial ("Alden Torch"), provides corporate investors with asset management and other services on low-income housing tax credit equity investments, managing a portfolio worth $13 billion, which represents more than 1,500 project partnerships and 200,000 units.  Upon information and belief, Alden Torch currently manages Plaintiff's interests in the Partnership and claims entitlement to collect substantially all of any financial interest that Plaintiff may have in the Partnership.

7.      The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and is between citizens of different States; thus, there is complete diversity in this action.

8.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 2201(a).

9.     A substantial part of the events or omissions giving rise to St. Mary's claims occurred in this Judicial District, and the property that is the subject of this action is situated in this Judicial District.

10.    Venue is appropriate in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A.    The Low-Income Housing Tax Credit Program.

11.    The low-income housing tax credit ("Tax Credit") is a federal tax credit generated from certain multi-unit housing projects that satisfy specific requirements including, but not limited to, an agreement by the property owner to rent certain units only to households with incomes below certain limits at rents that do not exceed certain federally-mandated limits for a period of at least 15 years after the property is placed in service (the "Compliance Period").

12.    The Tax Credit program is governed by Section 42 of the Internal Revenue Code, certain Treasury Regulations, guidance from the Treasury Department and the Internal Revenue Service, and state-specific procedures contained in various documents adopted by designated housing agencies in each state (collectively, the "Tax Credit Rules").

13.    In a typical low-income housing project, the project owner is organized as a limited partnership or limited liability company, wherein the managing general partner owns a de minimis interest in the fee owner entity but controls the day-to-day operations of the project, and a third-party tax credit investor is admitted as an investor limited partner, agreeing to contribute capital to the owner entity in exchange for an allocation of substantially all of the Tax Credits available to the project owner as well as certain other expected tax benefits.  The investor limited partner is typically an investment entity formed for the purpose of making tax credit investments to manage and reduce otherwise large and annual tax liability.

14.     The Tax Credit Rules provide that only the project owner of a qualified low-income housing project can qualify for and receive Tax Credits, and only if the project owner meets certain terms and conditions, and guarantees the continuation of these requirements for the duration of the Compliance Period, or as extended.

15.     The project owner collects the Tax Credits over a ten-year period, but remains obligated to maintain the low-income rents during the fifteen-year Compliance Period.  By the end of the Compliance Period, the project owner has collected all Tax Credits and other tax benefits available to the project.  As a result, by the end of the Compliance Period, the investor limited partner has realized the vast majority of economic benefits it bargained for and expected from the project and further expects to exit the partnership following the expiration of the Compliance Period.

16.     In a typical low-income housing project, a purchase option is often one of the primary economic incentives for the managing general partner.  While the investor limited partner receives a substantial yearly return on its investment over ten years in the form of Tax Credits and other economic benefits, the managing general partner manages the project during the Compliance Period for fees, which are traditionally required to be deferred and paid from project cash flows. The managing general partner is also the guarantor of the flow of Tax Credits, including any negative adjustors and operating losses, so the managing general partner assumes significant risk in a low-income housing project.  The managing general partner undertakes its investment of time, resources and money, as well as its duties and obligations, with the expectation that it will have the option and right to acquire the investor limited partner's interest in the operation of the business as a going-concern or acquire the real estate itself at the end of the Compliance Period at a formulaic price.  Traditionally, as in this case, the investor limited partner does not expect, nor

project, any significant cash payment at the exercise of the purchase option, but instead anticipates writing off its remaining tax basis in the Partnership (represented by its capital account) and receiving the corresponding tax benefits of the write-off.  This practice is consistent with the investment objectives of the investor limited partner, who seeks the economic benefits of receiving the allocations of Tax Credits and tax losses in order to manage and reduce otherwise large and annual tax liabilities, and does not seek significant cash payments that would undermine this purpose and cause increased tax liability.

17.     Without the purchase option, the managing general partner would have much less incentive to participate in the development of low-income housing and would be deprived of an economic right to which the investor limited partner had agreed at the project's inception.

18.     In this case, St. Mary's invested, among other things, time and other resources in the Partnership in exchange for certain purchase option rights and allocation of fees and cash flow over the lifetime of the Partnership, guaranteed the projected tax credits to be allocated to the Investor Limited Partner, and has dutifully served as the General Partner of the Partnership with these understandings and expectations.

19.     On the other hand, upon information and belief, the Limited Partners did not invest in the Partnership in order to receive a large cash payout like that now sought by their successor-in-interest.  Rather, when the Limited Partners made their investment in the Partnership, they did so with the expectation that they would not receive a large cash payout and the financial model prepared in connection with the Limited Partners' investment provided no consideration for a cash payout or return of capital after the tax credits had been fully allocated and the Partnership was beyond the 15-year Compliance Period.

**B.     The Partnership.**

20.     In 2001, the Partnership was formed with St. Mary's as the General Partner.

21.      In 2003, the Partnership was amended to admit Related Direct SLP LLC as the Special Limited Partner of the Partnership and to admit RCC Credit Facility, LLC as the Investor Limited Partner of the Partnership.

22.      The Partnership is governed by an Amended and Restated Agreement of Limited Partnership dated May 22, 2003 (the "LPA").  A true and correct copy of the LPA is attached hereto as Exhibit A.

23.      Concurrently with the execution of the LPA, St. Mary's was also granted a purchase option (the "Purchase Option") pursuant to the Option Agreement dated as of May 22, 2003 (the "Option Agreement").  A true and correct copy of the Option Agreement is attached hereto as Exhibit B.

24.      Section 2.4 of the LPA states: "The specific business and purpose of the Partnership is investment in real property and the provision of low income housing through the construction, renovation, rehabilitation, operation … and leasing of the Apartment Complex[.]"

25.      In accordance with the stated purpose of the LPA, the Apartment Complex was acquired, developed, and operated under the tenure of St. Mary's as General Partner, in such a manner as to qualify for the Tax Credits.

26.      Pursuant to the terms of the LPA, the Limited Partners agreed to be passive investors with limited rights related to the management of the Partnership.  The Limited Partners contributed 99.99% of the investment capital for the Partnership (exclusive of the capital acquired through a mortgage loan) and, in exchange, were entitled to an allocation of a corresponding percentage of the Tax Credits and tax losses.

27.      Pursuant to Section 3.4.B.i of the LPA, the amount of the Limited Partners' capital contribution was determined based upon the total amount of Tax Credits expected to be available

to the Partnership (the "Total Credit Amount"), as well as upon a projected return on investment which was calculated by the Limited Partners with the assumption that no Tax Credits in excess of the Total Credit Amount would be received by the Partnership.

28.     Upon information and belief, the projected return on investment calculated by the Limited Partners in connection with investing in the Partnership (the "ROI") was memorialized in a financial forecast and calculated based upon a return consisting of the Total Credit Amount, plus the total amount of anticipated tax losses through the end of the Compliance Period, plus a minimal amount of cash flow through the end of the Compliance Period.

29.     Upon information and belief, neither the ROI nor financial forecast prepared in connection with it included or projected the Limited Partners' receipt of any funds or proceeds distributed to them from a sale or refinancing of the Apartment Complex, and did not include the return, at any time, of any potential positive capital account balances to the Limited Partners. Instead, upon information and belief, the ROI and financial forecasts contemplated, anticipated and projected that any potential positive capital account balances would be written off by the Limited Partners upon their exit from the Partnership following the end of the Compliance Period.

30.     Upon information and belief, the allocation and receipt of the Tax Credits and potential tax losses were the material motivating factors for the Limited Partners' investment in the Partnership.

31.     Upon information and belief, the financial forecast prepared in connection with the ROI was prepared in a manner consistent with the exemplar financial forecast attached hereto as Exhibit C.

32.     The Tax Credits have been fully utilized, and the Limited Partners received all of the benefits they expected from the Tax Credits and tax losses.  The Compliance Period ended on December 31, 2018, and there is no risk of recapture of any Tax Credits.

33.     Because the Tax Credits have been fully allocated and none remain available; the Limited Partners have limited managerial or control rights under the LPA; there is a limited market for the Limited Partners' ownership interests in the Partnership; the Limited Partners receive little financial benefit from continued operations of the Partnership after the Compliance Period; and the Limited Partners cannot force a liquidation of the Partnership's assets, the fair market value of the Limited Partners' interests in the Partnership is limited and includes no consideration for positive capital accounts as any such account will be written off to generate tax benefits for the Limited Partners upon the sale of their Limited Partner interests.  As a result, when the Option Agreement and LPA were negotiated and drafted, the Limited Partners did not expect nor intend to receive the return of any positive capital account that may exist at the time of the redemption of the Limited Partners' interests in the Partnership pursuant to the terms of the Option Agreement and LPA.

34.     Unlike the Limited Partners' investments in the Partnership, which are compensated primarily throughout the first fifteen years of operation of the Apartment Complex through the Tax Credits and tax losses allocated to the Limited Partners, the LPA provides that St. Mary's investments in the Partnership are to be compensated primarily through allocation of fees and cash flow over the lifetime of the Partnership and the allocation of funds resulting from a sale or refinancing of the Apartment Complex.  Pursuant to Section 12.1 of the LPA, the Partnership is to continue until December 31, 2050.

35.     Section 9.2.A of the LPA sets forth the schedule for distribution of cash flow resulting from the operations of the Partnership, providing generally for the payment of certain fees to St. Mary's and then splitting the remaining cash flow 24.99% to the Investor Limited Partner, 0.01% to the Special Limited Partner, and 75% to St. Mary's.

36.     Section 5.4 of the LPA sets forth the General Partner's authority to sell or refinance the Apartment Complex during the operation of the Partnership as a going concern, either with the Special Limited Partner's consent pursuant to Section 5.4.A, or at the Special Limited Partner's request pursuant to Section 5.4.B.

37.     Section 9.2.B of the LPA provides the schedule for distribution of proceeds resulting from a sale or refinancing of the Apartment Complex during the operation of the Partnership as a going concern (the "Sales Proceeds Waterfall").  The Sales Proceeds Waterfall first requires the payment of certain debts and Partnership liabilities, and then distributes the remaining proceeds 24.99% to the Investor Limited Partner, 0.01% to the Special Limited Partner, and 75% to St. Mary's, without consideration of the partners' capital accounts.

38.     Thus, a sale of the Apartment Complex transacted pursuant to Section 5.4 of the LPA would not generate proceeds to pay the Limited Partners' capital accounts balances because, under the LPA, residual sales proceeds are to be distributed pursuant to the Sales Proceeds Waterfall, which does not provide for any distributions for payment of capital accounts balances; which was the intent of the parties to the LPA and Option Agreement.

39.     Section 12.2 of the LPA sets forth the General Partner's authority, acting as the liquidating agent of the Partnership, to sell the Apartment Complex as part of the liquidation of the Partnership's assets during the dissolution of the Partnership.

40.     Section 12.4 of the LPA provides the schedule for distribution of proceeds resulting from a liquidation sale of the Partnership's assets, including the Apartment Complex, when such liquidation is transacted by the Partnership's liquidating agent during dissolution of the Partnership (the "Liquidation Provision").  The Liquidation Provision first requires the payment of certain debts and Partnership liabilities and then distributes the remaining proceeds to the General Partner and the Limited Partners pro rata in accordance with their respective capital accounts.

41.     Thus, the LPA contemplates two different scenarios for the distribution of the residual proceeds from a sale of the Apartment Complex.  If the Apartment Complex is sold prior to the dissolution of the Partnership, the residual sales proceeds are to be distributed pursuant to the Sales Proceeds Waterfall without consideration of the partners' capital accounts.  Conversely, if the Apartment Complex is sold by the liquidating agent as part of the liquidation of the Partnership's assets during dissolution of the Partnership, then the residual sales proceeds are to be distributed pursuant to the Liquidation Provision, pro rata in accordance with the partners' capital accounts.

42.     At the time of entering into the LPA and Option Agreement, the original contracting parties mutually understood, intended, and agreed that the Limited Partners would not receive a payment of their capital accounts in the event that the Apartment Complex was sold prior to the dissolution of the Partnership or in connection with the Option Agreement.  Instead, the original contracting parties mutually understood, intended, and agreed that the Limited Partners would write-off their positive capital account balances and thereby receive additional tax benefits reducing their tax liability.

43.     In other words, at the time of entering into the LPA and Option Agreement, the original contracting parties mutually understood, intended, and agreed that the residual proceeds

from any sale of the Apartment Complex transacted prior to the dissolution of the Partnership, including from the hypothetical sale envisioned by the Option Agreement, would be distributed pursuant to the Sales Proceeds Waterfall, not the Liquidation Provision.

### C.   The Purchase Option.

44.     The Limited Partners, and thus Plaintiff as their successor-in-interest, are privy to and bound by the Purchase Option.

45.     The Purchase Option gives St. Mary's the right to purchase the Apartment Complex, or to cause the Partnership to redeem the Limited Partners' interests in the Partnership, within two years following the end of the Compliance Period.  This option period therefore runs from January 1, 2019 through December 31, 2020.

46.     In either event, whether St. Mary's exercises its Purchase Option to purchase the Apartment Complex or to redeem the Limited Partners' interests in the Partnership, the Option Agreement provides St. Mary's with the right to cause the Limited Partners to exit the Partnership at a formulaic price whereby becoming the sole owner and operator of the Apartment Complex, after the Compliance Period has ended and the Limited Partners have received the Tax Credits and other tax benefits which were their anticipated return on their investment in the Partnership.

47.     St. Mary's Purchase Option, pursuant to which it has the right to cause the Limited Partners to exit the Partnership at a formulaic price and thus to become the sole owner and operator of the Apartment Complex after the Compliance Period has ended, is an important incentive and economic right to which the Limited Partners agreed at the Partnership's inception.  The exercise of the Purchase Option also constitutes the deferred benefit that St. Mary's bargained for and has expected since the Partnership's inception, in return for St. Mary's operation of the Partnership and the Apartment Complex in compliance with the Tax Credit Rules such that the Limited

Partners have received all of the Tax Credits and other tax benefits representing their benefit of the bargain.

48.     On January 1, 2019, St. Mary's exercised the Purchase Option in accordance with the Option Agreement by delivering written notice of the exercise to the Partnership and to the Limited Partners, including notice that St. Mary's elected to cause the Partnership to redeem the Limited Partners' interests in the Partnership.  A true and correct copy of St. Mary's January 1, 2019 exercise of the Purchase Option is attached hereto as Exhibit D.

49.     St. Mary's exercise of the Purchase Option was valid, effective, and binding on the Limited Partners, and on Plaintiff as their successor-in-interest, and created a contract for sale of the Limited Partners' interests in the Partnership, thereby requiring the Limited Partners to participate in the buyout process and transfer their ownership interests accordingly as required by the Option Agreement.

50.     Pursuant to Section 5.1 of the Option Agreement, the closing on the Partnership's redemption of the Limited Partners' interests in the Partnership "shall occur no later than one hundred eighty (180) days" after the Partnership's receipt of St. Mary's written notice of the exercise.  And so, the closing must take place on or before June 30, 2019.

51.     Upon information and belief, the Limited Partners have commenced this action in an effort to forestall St. Mary's rights and to frustrate the transfer of their interests before the contractually mandated closing date of June 30, 2019.

52.     Pursuant to Section 4.1 of the Option Agreement, the price to be paid at closing for purchase of the Apartment Complex shall be the greater of: (a) the then fair market value of the Apartment Complex subject to any and all restrictions and encumbrances, including rental restrictions in place at the time of exercising the Purchase Option, appraised in accordance with

the requirements of the Option Agreement; or (b) the sum of the mortgages encumbering the Apartment Complex (unless they are assumed by St. Mary's), plus the tax liability the Limited Partners would incur as the result of a sale of the Apartment Complex, plus the amount of any unreimbursed deficiency in Tax Credits recognized by the Limited Partners.

53.     Pursuant to Section 4.2 of the Option Agreement, the fair market value of the Apartment Complex shall be determined through an appraisal process.  Section 4.2.b of the Option Agreement requires that St. Mary's and the Limited Partners shall "select a mutually acceptable appraiser" who shall determine the fair market value of the Apartment Complex.

54.     Also pursuant to Section 4.2.b of the Option Agreement, in the event that St. Mary's and the Limited Partners are unable to agree on an appraiser, they "shall each select an appraiser" to appraise the fair market value of the Apartment Complex.  Pursuant to Section 4.2.c.ii of the Option Agreement, "if the difference between the two appraisals is less than or equal to ten percent (10%) of the lower of the two appraisals, the fair market value shall be the average of the two appraisals."

55.     On the other hand, pursuant to Section 4.2.c.iii of the Option Agreement, "if the difference between the two appraisals is greater than ten percent (10%) of the lower of the two appraisals and at least one of the appraisals exceeds the amount described in Section 4.1(b), then the two appraisers shall jointly select a third appraiser.  The third appraiser shall be instructed and directed to select one of the two other appraisals, which selection shall then become final and binding upon the parties."

56.     Pursuant to Section 4.2.c.iv of the Option Agreement, "any appraiser selected pursuant to this Section shall be an MAI appraiser and shall have at least ten (10) years experience

in the geographic area" in which the Apartment Complex is located and experience appraising comparable projects to the Apartment Complex.

57.    Pursuant to Article VII of the Option Agreement, in the event that St. Mary's elects for the Partnership to redeem the Limited Partners' interests in the Partnership, then the price to be paid at closing "shall equal the amount otherwise payable to [the Limited Partners] as if the fee title to the [Apartment Complex] had been acquired" and any mortgages on the Apartment Complex "were satisfied or otherwise paid or assumed."

58.    Thus, pursuant to Article VII of the Option Agreement, the price to be paid at the closing on the redemption of the Limited Partners' interests is equal to the residual sales proceeds that would be distributed to the Limited Partners in the hypothetical event of a sale of the Apartment Complex for its fair market value as appraised in accordance with the Option Agreement.

59.    Accordingly, under the LPA and the Option Agreement, the price to be paid to Plaintiff for redemption of the Limited Partners' interests in the Partnership is to be an amount equivalent to the residual sales proceeds that would be distributed to Plaintiff pursuant to the Sales Proceeds Waterfall as though the Apartment Complex had been sold pursuant to Section 5.4 of the LPA, with no consideration given to the Limited Partners' capital accounts.

60.    The LPA and Option Agreement do not contemplate that the price to be paid to Plaintiff for redemption of the Limited Partners' interests in the Partnership is to be an amount equivalent to the residual proceeds that would be distributed to Plaintiff pursuant to the Liquidation Provision as though the Apartment Complex had been sold as part of the liquidation of the Partnership's assets during the dissolution of the Partnership.

61.     At the time the original contracting parties entered into the Option Agreement, they mutually understood, intended, and agreed that the Limited Partners would not receive a payment of their capital accounts in the event that St. Mary's exercised its Purchase Option to either purchase the Apartment Complex or redeem the Limited Partners' interests in the Partnership. Instead, the original contracting parties mutually understood, intended, and agreed that the Limited Partners would write-off their positive capital account balances to maximize their investment purpose – the receipt of additional tax benefits to reduce their tax liabilities.  Accordingly, the LPA and Option Agreement were and are drafted in such a fashion to accomplish these mutual understandings and intentions.

62.     In other words, at the time of entering into the Option Agreement, the original contracting parties mutually understood, intended, and agreed that the purchase price for St. Mary's exercise of the Purchase Option would be calculated based upon a hypothetical sale of the Apartment Complex at its appraised fair market value and a distribution of residual sales proceeds pursuant to the Sales Proceeds Waterfall, not the Liquidation Provision.

63.     St. Mary's exercise of the Purchase Option is not an event of dissolution under the LPA.

64.     St. Mary's acquisition of the Limited Partners' interests pursuant to the Option Agreement is not an event of dissolution under the LPA.

65.     The redemption of the Limited Partners' interests pursuant to the Option Agreement is not an event of dissolution under the LPA.

**D.     The Dispute.**

66.     On September 4, 2018, pursuant to the Limited Partners' request made under Section 5.4.B.i of the LPA, St. Mary's submitted a "Qualified Contract" application on behalf of

the Partnership to the New York Homes and Community Renewal Agency ("NYSHCR"), requesting the NYSHCR to find a qualified purchaser for the Apartment Complex.

67.     On October 4, 2018, the NYSHCR declined to accept the Partnership's application for the Qualified Contract process.   A true copy of the NYSHCR's October 4, 2018 letter is attached hereto as Exhibit E.

68.     St. Mary's correctly and validly exercised its Purchase Option on January 1, 2019, including electing to cause the Partnership to redeem the Limited Partners' interests in the Partnership.

69.     St. Mary's Purchase Option provided under the Option Agreement supersedes the Qualified Contract right provided under Section 5.4.B.i of the LPA, may be exercised regardless of whether the Qualified Contract right has been exercised, and when exercised also extinguishes such right and terminates any further effort or requirement to pursue the Qualified Contract process.

70.     Pursuant to the Option Agreement, the closing on the redemption of the Limited Partners' interests in the Partnership must take place on or before June 30, 2019.

71.     Also pursuant to the Option Agreement, the determination of the redemption price for the Limited Partners' interests depends, in part, upon the appraised fair market value of the Apartment Complex.

72.     And so, to determine the redemption price for the Limited Partners' interests in the Partnership, St. Mary's and the Special Limited Partner must select a mutually acceptable appraiser or, if they are unable to agree on an appraiser, must each select their own appraiser.

73.     On November 29, 2018, in anticipation of exercising its Purchase Option, St. Mary's sent correspondence to the Limited Partners and their agent, Alden Torch, proposing GAR

Associates as the appraiser.  St. Mary's requested a response by December 13, 2018.  A true and correct copy of St. Mary's November 29, 2018 correspondence (without enclosures) is attached hereto as Exhibit F.

74.     The Limited Partners did not respond to St. Mary's November 29, 2018 request for approval of GAR Associates as the appraiser.

75.     On January 3, 2019, following its exercise of the Purchase Option, St. Mary's again sent correspondence to the Limited Partners and their agent, Alden Torch, proposing GAR Associates as the appraiser for purposes of setting the redemption price.  St. Mary's requested a response by January 10, 2019, because "time is of the essence" as set-forth by the terms of the Option Agreement.  A true and correct copy of St. Mary's January 3, 2019 correspondence (without enclosures) is attached hereto as Exhibit G.

76.     The Limited Partners did not respond to St. Mary's January 3, 2019 request for approval of GAR Associates as the appraiser.

77.     Instead, on January 11, 2019, this lawsuit was filed by Plaintiff, an Alden Torch affiliate and the Limited Partners' successor-in-interest.

78.     Contemporaneously with filing the lawsuit, the Limited Partners contended, via correspondence from their counsel dated January 11, 2019, that their invocation of the Qualified Contract process under Section 5.4.B.i of the LPA precluded St. Mary's from exercising its Purchase Option.

79.     The Limited Partners further contended that the applicable purchase price for St. Mary's exercise of its Purchase Option is to be calculated based upon the distribution of residual proceeds from a hypothetical sale of the Apartment Complex pursuant to the Liquidation Provision, not the Sales Proceeds Waterfall.

80.     The Limited Partners also threatened to proceed with their lawsuit unless St. Mary's withdrew its exercise of the Purchase Option and further conceded to the applicability of the Liquidation Provision to any sale of the Apartment Complex.  A true and correct copy of the Limited Partners' counsel's January 11, 2019 correspondence (without enclosures) is attached hereto as Exhibit H.

81.     On January 29, 2019, St. Mary's sent correspondence to the Limited Partners and their agent, Alden Torch, informing them that the Limited Partners had failed to meet their obligations under Section 4.2.b of the Option Agreement to participate in the appraisal process by either consenting to GAR Associates or selecting their own appraiser, and thus had waived their right to the same.  St. Mary's informed the Limited Partners that: (a) St. Mary's had proceeded with the GAR Associates appraisal due to the Limited Partners' waiver of their right to participate in the appraisal process; (b) the appraised fair market value of the Apartment Complex is $4,875,000; (c) the purchase price for the redemption of the Limited Partners' interests calculated in accordance with the Option Agreement and the Sales Proceeds Waterfall is $242,064.39 for the Investor Limited Partner's interest and $96.86 for the Special Limited Partner's interest; and (d) St. Mary's was prepared to close on the redemption sale on or before February 8, 2019.  St. Mary's further requested that the Limited Partners confirm their preparedness to transfer their interests in accordance with the Option Agreement so that St. Mary's could coordinate the place and time for the closing.  A true and correct copy of St. Mary's January 29, 2019 correspondence (the "Redemption Sale Notice") is attached hereto as Exhibit I.

82.     On February 1, 2019, through their counsel, the Limited Partners responded to St. Mary's January 29, 2019 correspondence, again denying that St. Mary's was entitled to exercise its Purchase Option, refusing to accept the GAR Associates appraisal, refusing to accept

an Option purchase price calculated in accordance with the Sales Proceeds Waterfall, and declining to select their own appraiser.  A true and correct copy of the Limited Partners' counsel's February 1, 2019 correspondence (without enclosures) is attached hereto as Exhibit J.

83.     St. Mary's is entitled to close on the Purchase Option by June 30, 2019, as provided by Section 5.1 of the Option Agreement, but because the Limited Partners are failing and refusing to meet their obligations under the Option Agreement based upon their deliberate misinterpretation of the LPA, St. Mary's contractual rights are being frustrated and compromised.

84.     Upon information and belief, this conduct is a pattern replicated by Alden Torch and its affiliates throughout the LIHTC industry in which Alden Torch has inserted itself in recent years for the express purpose of depriving general partners or managing members from achieving the negotiated rights and benefits provided in their agreements with the investor limited partners and Alden Torch's predecessors.  Alden Torch has repeatedly acquired investor limited partner interests in LIHTC partnerships or management rights over those interests, and then bullied the managing partners and reinterpreted the provisions of the partnerships' governing documents in an effort to manufacture an unwarranted cash return when it is time for the investor limited partners to exit the partnerships.  *See, e.g., Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P.*, 99 N.E.3d 744 (Mass. 2018); *see also Pelican Rapids Leased Housing Assocs I, LLC v. Broadway/Pelican Rapids, L.P.,* Minnesota District Court, Otter Tail County, Case No. 56-CV-16-372, *vacated upon stipulation* (a true and correct copy of which is attached as Exhibit K).

85.     As it has done elsewhere, Alden Torch through its affiliates here is attempting to negate an important right bargained for by St. Mary's in an effort to misappropriate the long-delayed return on investment that St. Mary's is now rightfully due, as the Compliance Period has

ended and all of the anticipated Tax Credits have been received by the Limited Partners through St. Mary's diligent operation of the Partnership.

## COUNT I—BREACH OF CONTRACT

86. St. Mary's fully incorporates the above paragraphs by reference as if fully stated herein.

87. The Option Agreement is a valid and binding contract, for which St. Mary's provided sufficient consideration.

88. St. Mary's fully performed its obligations under the Option Agreement and exercised its Purchase Option thereby creating a contract for sale of the Limited Partners' entire interests in the Partnership.

89. The Limited Partners have breached their contractual obligations to St. Mary's, including their duties of good faith and fair dealing, and damaged St. Mary's, by failing and refusing to participate in the appraisal process required under the Option Agreement and by refusing to transfer their interests pursuant to the contract created by St. Mary's exercise of the Purchase Option.

90. St. Mary's is entitled to, among other things, an order for specific performance requiring the Limited Partners to transfer their interests in the Partnership on or before June 30, 2019, for the purchase price set forth in the Redemption Sale Notice.

91. St. Mary's is entitled to recover any damages it incurs due to the Limited Partners' breaches of the Option Agreement and the contract for sale of their interests created by St. Mary's exercise of the Purchase Option.

## COUNT II—DECLARATORY JUDGMENT

92. St. Mary's fully incorporates the above paragraphs by reference as if fully stated herein.

93.     An actual controversy exists between St. Mary's and the Limited Partners as to the parties' rights and obligations under the LPA and the Option Agreement, specifically concerning St. Mary's right to exercise the Purchase Option notwithstanding the Limited Partners' invocation of the Qualified Contract process and the calculation of the purchase price for St. Mary's exercise of the Purchase Option.

94.     Plaintiff's knowing and deliberate disregard of its obligation under the LPA and Option Agreement has deprived and will continue to deprive St. Mary's of its rights and benefits under the agreements.

95.     St. Mary's fully performed its obligations under the Option Agreement and exercised its Purchase Option thereby creating a contract for sale of the Limited Partners' entire interests in the Partnership.

96.     St. Mary's is entitled to close on its Purchase Option on or before June 30, 2019 for a purchase price calculated based upon a hypothetical sale of the Apartment Complex at its appraised fair market value and a distribution of residual sales proceeds pursuant to the Sales Proceeds Waterfall, as set forth in the Redemption Sale Notice.

97.     Despite this, the Limited Partners have failed and refused to participate in the appraisal process and have stated that: (a) St. Mary's may not exercise the Purchase Option due to the Limited Partners' invocation of the Qualified Contract process; (b) the purchase price for St. Mary's exercise of the Purchase Option must be calculated based upon a hypothetical sale of the Apartment Complex at its appraised fair market value and a distribution of residual sales proceeds pursuant to the Liquidation Provision; (c) they do not consent to the GAR Associates appraisal of the fair market value of the Apartment Complex; and (d) they will not transfer their interests in the Partnership pursuant to the Redemption Sale Notice.

98. By reason of the foregoing, absent judicial intervention, St. Mary's is threatened with the imminent harm of being deprived of its rights under the Option Agreement and the contract for sale of the Limited Partners' interests in the Partnership created by St. Mary's exercise of its Purchase Option.

99. St. Mary's is entitled to a declaration, pursuant to 28 U.S.C. § 2201(a), as follows:

a. St. Mary's exercise of its Purchase Option is valid, effective, and enforceable and created a contract for sale of the Limited Partners' entire interests in the Partnership;

b. St. Mary's Purchase Option provided under the Option Agreement supersedes the Qualified Contract right provided under Section 5.4.B.i of the LPA;

c. When St. Mary's exercised its Purchase Option provided under the Option Agreement the exercise extinguished the Qualified Contract right such that St. Mary's need not pursue the Qualified Contract process;

d. The purchase price for St. Mary's exercise of the Purchase Option must be calculated based upon a hypothetical sale of the Apartment Complex at its appraised fair market value and a distribution of residual sales proceeds pursuant to the Sales Proceeds Waterfall;

e. The Limited Partners are bound by the GAR Associates appraisal of the fair market value of the Apartment Complex; and

f. The Limited Partners must close on the transfer of their interests in the Partnership on or before June 30, 2019, for the purchase price set forth in the Redemption Sale Notice, and may not otherwise contend that the

Purchase Option somehow expires if no such closing occurs by June 30, 2019.

## JURY DEMAND

St. Mary's respectfully demands a jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, St. Mary's respectfully prays for the following relief:

1. That the Court order specific performance by the Limited Partners, pursuant to the Option Agreement and the contract for sale of their interests in the Partnership created by St. Mary's exercise of its Purchase Option, to transfer their interests in the Partnership on or before June 30, 2019, for the purchase price set forth in the Redemption Sale Notice;

2. That the Court issue a declaration that:

    a. St. Mary's exercise of its Purchase Option is valid, effective, and enforceable and created a binding contract for sale of the Limited Partners' entire interests in the Partnership;

    b. St. Mary's Purchase Option provided under the Option Agreement supersedes the Qualified Contract right provided under Section 5.4.B.i of the LPA;

    c. When St. Mary's exercised its Purchase Option provided under the Option Agreement the exercise extinguished the Qualified Contract right such that St. Mary's need not pursue the Qualified Contract process;

    d. The purchase price for St. Mary's exercise of the Purchase Option must be calculated based upon a hypothetical sale of the Apartment Complex at its appraised fair market value and a distribution of residual sales proceeds pursuant to the Sales Proceeds Waterfall;

e.    The Limited Partners are bound by the GAR Associates appraisal of the fair market value of the Apartment Complex; and

f.    The Limited Partners must close on the transfer of their interests in the Partnership on or before June 30, 2019, for the purchase price set forth in the Redemption Sale Notice, and may not otherwise contend that the Purchase Option somehow expires if no such closing occurs by June 30, 2019.

3.    That the Court grant such other and further relief, including, without limitation, monetary relief and attorneys' fees and costs, which the Court may deem just, equitable and appropriate under the circumstances presented.

Dated: February 14, 2019

**FARRELL FRITZ, P.C.**

By: _ s/ Kathryn C. Cole _____
    Kathryn C. Cole
    John P. McEntee
    400 RXR Plaza
    Uniondale, NY 11556
    Tel.: (516) 227-0700
    Email: jmcentee@farrellfritz.com
          kcole@farrellfritz.com

*- and -*

**WINTHROP & WEINSTINE, P.A.**
David A. Davenport, MN Bar No. 285109*
Justice E. Lindell, MN Bar. No. 312071*
225 South Sixth Street, Suite 3500
Minneapolis, MN 55402
Tel.: (612) 604-6716
Email: ddavenport@winthrop.com
      jlindell@winthrop.com

* *Pro Hoc Vice* Admission Pending

*Attorneys for Defendant*